UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CALEB M. ELLEDGE,

     Plaintiff,

v.                                                                                Civ. No. 22-123 KWR/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

     Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand with Supporting Memorandum" [ECF 24] ("Motion"). The Motion is fully briefed. *See id.*; ECF 28 ("Resp.").[1] Having meticulously reviewed the entire record, and for the reasons articulated below, the Court **RECOMMENDS**[2] the Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

Plaintiff is a 36-year-old man living with his mother and disabled brother. *See, e.g.*, Administrative Record ("AR") at 28, 43. He served three years in the United States Army. *E.g.*, *id.* at 1045. He completed trade school and earned an associate's degree. *Id.* at 45. About thirteen years ago, he was a plumber, at one point managing other tradesmen as a job supervisor, and he served as Superintendent of the Plumber's Union. *See, e.g.*, *id.* at 28, 1045. That employment apparently ceased in early August 2012, due to what he alleges was the onset of his disability. *See,*

---

[1] Plaintiff elected not to file a reply brief but did file a Notice of Briefing Complete. ECF 29.

[2] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's May 16, 2022, Order of Reference. ECF 20.

*e.g.*, Mot. at 1; *but see* AR at 1259 (physician records indicating that Plaintiff continued performing handyman work with his son and cousin until 2018).

Plaintiff claims disability due to a series of physical and mental conditions: a stabbing wound on his left arm and torso, a gunshot wound requiring right-eye enucleation, concomitant mental conditions resulting from those experiences, poor vision in his left eye, and extreme obesity. *E.g.*, Mot. at 1. He maintains that these conditions render him effectively blind, unable to stand or lay flat for long periods, suffering from headaches and dizziness, and debilitated by anxiety, seizures, a mild neurocognitive deficiency due to his traumatic brain injury, and various mood disorders. *E.g.*, *id.* at 1–3. Consequently, Plaintiff asserts the need for a caretaker, a driver, "tools to open up a [two-liter plastic bottle]," and vestibular training in order to function. AR at 44–45, 50–51, 54; *but see id.* at 21, 43, 55–57 (attesting to his ability to shower, self-groom, dress, listen to audiobooks about indigenous cultures or politics, attend and participate in weekly karaoke, spend time with his grandchildren five days a week, feed and play with his dog, and the ability to roll his own clothing).

On August 6, 2019, Plaintiff applied to the Social Security Administration ("SSA" or "Commissioner") for disability insurance benefits and supplemental security income. *E.g.*, AR at 12.[3] By May 19, 2021, the SSA had denied Plaintiff's claim initially, on reconsideration, and a third time after a hearing held by Administrative Law Judge ("ALJ") Jeffrey N. Holappa. *Id.* at 1–3, 12, 86, 100, 117, 135, 139, 143, 149, 153. The ALJ determined that, although Plaintiff could not perform his previous work, he had the residual functional capacity ("RFC") to perform other jobs existing nationwide in significant numbers. *Id.* at 29 (listing viable employment as a "laundry

---

[3] The Court notes that Plaintiff previously filed (and was denied) disability insurance benefits and supplemental security income in April 2018. The ALJ construed the 2019 application as an "implied request for reopening . . . h[is] October 11, 2018[,] initial determination." AR at 12.

classifier," "housekeeper," or "garment sorter").   Thus, the ALJ found Plaintiff not disabled as defined by the Social Security Act.   *Id.* at 30.   Once the Appeals Council declined to assume jurisdiction of Plaintiff's case, the ALJ's decision became "final" agency action ripe for appeal to an Article III court.   20 C.F.R. § 404.984[4]; *accord* 5 U.S.C. § 704.   On February 21, 2022, Plaintiff filed in this Court for review of the Commissioner's decision.   ECF 1.

## II.   STANDARD OF REVIEW

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish his inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process.   *E.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citing 20 C.F.R. § 416.920).   The first four steps require the claimant to show that (1) "he is not presently engaged in substantial gainful activity," (2) "he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents him from performing his past work."   *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).   The claimant bears the burden of proof at steps one through four.   *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2.   If the claimant reaches step five, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other

---

[4] "[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge, . . . the decision of the administrative law judge . . . will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."

work in the national economy in view of his age, education, and work experience." *Yuckert*, 482

U.S. at 142, 146 n.5.  However, the claimant reassumes the burden once he seeks judicial review.

*Id.* at 146 ("An individual shall not be considered . . . disable[ed] unless he furnishes such medical

and other evidence . . . as the [Commissioner] may require.").

## B.  Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and

factual.  *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (internal citations omitted)

("The standard of review in a social security appeal is whether the correct legal standards were

applied and whether the decision is supported by substantial evidence.").  If the ALJ applied the

correct legal standards and supported his findings with substantial evidence, the Commissioner's

decision stands.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates

whether he "followed the specific rules of law" required for "weighing particular types of evidence

in disability cases."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The Court may reverse

or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so."

*Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless

"[un]supported by substantial evidence."  42 U.S.C. § 405(g).  This standard requires "look[ing]

to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to

support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "[T]he

threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court

has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Put differently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court [c]ould justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

## C. Medical Opinion Evidence

To properly formulate a claimant's RFC, the ALJ must consider all medical opinions[5] in the record. *E.g.*, *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotations omitted). Specifically, the ALJ must consider five factors: supportability, consistency, relationship with the claimant, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c

---

[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); Soc. Sec'y Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2.

5

(2017); *e.g.*, *Nielsen v. Comm'r, SSA*, Civ. No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022).  "The most important factors are supportability and consistency."  *Nielsen*, 2022 WL 15570650, at *2.  Supportability examines whether the medical opinion is based on sufficient evidentiary support.  Consistency, on the other hand, requires comparing the medical opinion to the other available medical or nonmedical sources.  The remaining factors require the opinions to be considered in the ALJ's opinion, but not necessarily explicitly discussed, unless "there are differing medical opinions on an issue[,] those opinions are equally well-supported[,] and [those opinions are] consistent with the record."  *See id.* (citing 20 C.F.R. §§ 416.920c(a), (b)(2), (b)(3)).

### D.  Developing the Record

Notwithstanding the claimant's burden of showing one or more "severe" impairments, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359 (10th Cir. 1993); *see also Wall v. Astrue*, 561 F.3d 1048, 1062–63 (10th Cir. 2009).  The duty does not trigger, however, unless the claimant raises an issue that is "substantial on its face."  *Id.* at 1063 (quotations omitted); *see also Davison v. Colvin*, 596 F. App'x 675, 679 (10th Cir. 2014) (unpublished) (citation omitted) ("[T]he objective evidence in the record" must "suggest[ ] the existence of a condition which could have a material impact on the disability decision requiring further investigation.").

The duty to develop is not without additional caveats.  For instance, it terminates if "sufficient information exist[s] for the ALJ to make [a] disability determination."  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).  Further, if the claimant is represented by counsel at the administrative hearing, the ALJ's duty is lessened because he is "entitled to rely on the

[attorney] to structure and present [the claimant's] case in a way that the claimant's claims are adequately explored." *Id.* at 1188 (citing cases stating the same).

## III. PLAINTIFF'S CONTENTIONS

Plaintiff's Motion is best understood as two arguments. First, he contends that the ALJ failed to develop the record regarding Plaintiff's alleged mental impairments. Mot. at 1, 9. Second, he asserts the ALJ's decision rests on factual error because, in the process of formulating the RFC, the ALJ failed to "properly" consider Plaintiff's alleged mental limits, vision deficiencies, and his statements made at the hearing. *Id.* at 1–2, 10–14.[6] Consequently, Plaintiff asks the Court to reverse the denial of benefits or remand for another round of administrative proceedings.

## IV. ALJ'S DECISION AND FINDINGS

Having followed the SSA's five-step process and after "careful consideration of all the evidence," the ALJ found that Plaintiff was not "disab[led] within the meaning of the Social Security Act" at all relevant times. AR at 13; *accord* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff ceased all substantial gainful activity on or about August 12, 2012—the alleged onset of his disability. AR at 15. At step two, the ALJ found that Plaintiff has the following severe impairments: "status-post gunshot wound to the face with right

---

[6] Plaintiff also claims legal error occurred but fails to specify which rules the ALJ misapplied or omitted. *See id.* at 2; *but see* D.N.M. LR-Civ 7.1(a) (a motion must "state with particularity the grounds and the relief sought"); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (courts may limit their consideration to the issues "that have been adequately briefed for [the court's] review"); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (internal quotation marks omitted)). Thus, the Court considers the "legal error" argument to be inadequately briefed and, therefore, does not address it.

eye enucleation/monocular vision; seizure disorder; obesity; migraine headaches; cervicalgia; post-traumatic stress disorder (PTSD); somatic symptom disorder; mild neurocognitive disorder due to a traumatic brain injury (TBI); unspecified mood disorder; and depression." *Id.* Nonetheless, the ALJ at step three found that those conditions failed to satisfy the listings when considered alone or grouped together. *Id.* at 16–18 (considering and rejecting Listings 1.15, 1.16, 2.02, 2.03, 2.04, 11.02, 12.04, 12.07, 12.11, and 12.15); *id.* at 19 (finding mild and moderate mental impairments under the "paragraph B" criteria due to conflicting medical evidence and inconsistent claimant statements); *accord* 20 C.F.R. § 404, Subpart P, App'x 1.[7]   The ALJ reached this conclusion only after identifying which requisite medical findings each listing needed and the record's lack of certain necessary facts.   AR at 16–18.

### B.  Step Four

The ALJ's assessment of the RFC focused on Plaintiff's vision, mobility, dexterity, and mental limitations.  "After careful consideration of the entire record," the ALJ assessed Plaintiff's RFC in pertinent part as:

> [T]he [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) . . . . He is limited to no fine depth perception . . . and no peripheral vision on the right side.  He is limited to understanding, remembering, and carrying out simple, routine tasks, making simple work-related decisions, and dealing with changes in a routine work setting.  He is able to maintain concentration, persistence, and pace for at least two-hour intervals.  The claimant is limited to occasional interactions with others, including supervisors, coworkers, and the general public.

*Id.* at 20.   The ALJ anchored this finding to objective medical records, the observations of reviewing physicians, and his assessment of Plaintiff's self-described symptoms.  *Id.* at 21–28. These considerations led the ALJ to conclude that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause his alleged symptoms," the record did not

---

[7] The ALJ's paragraph B analysis is discussed *infra* due to its contribution to the RFC formulation.

support the subjective symptoms that Plaintiff described to the SSA. *Id.* at 25; *but see id.* at 25–26 (finding insufficient support in the record to corroborate Plaintiff's representations). Like the ALJ did, the Court next turns to a review of those claims and the portions of the record relevant to them.

### 1. Vision

Plaintiff claims he is functionally blind after his ex-girlfriend's alleged paramour shot him in the face outside an Albuquerque casino. *E.g.*, *id.* at 53–54, 837, 1404. Although the ALJ acknowledged that Plaintiff has total blindness in the right eye, he rejected Plaintiff's claims about the acuity of his left eye's residual vision. In support, the ALJ explicitly discussed records from two separate medical offices showing that Plaintiff's claims conflicted with his test results: the remaining pupil was 'equal, round, and reactive to light and accommodation" with an "uncorrected visual acuity" of 20/80-1. *Id.* at 22–25; *see also id.* at 1317–26 (documenting unremarkable PERRLA test results; normal confrontational fields; and some, albeit "minimal," vision in the remaining eye); *but see* 20 C.F.R. § 404.1581 (defining statutory blindness as a corrected visual acuity of 20/200). The ALJ cited records mentioning that Plaintiff used to rely on a cane but eventually stopped needing it. *Id.* at 25. The cited evidence also described Plaintiff completing visual training rehabilitation exercises, such as shopping in a mock grocery store using a list, with "minimal assistance" and "demonstrated progress." *Id.* at 22. Further, the ALJ cited evidence undercutting how severely Plaintiff's visual limits allegedly impact his independent functioning at home. *Compare id.* at 57 (Plaintiff claiming his inability to see makes him unable to cook or perform chores beyond rolling his own clothing), *with id.* at 21 (Plaintiff reporting the ability to "prepare his own meals usually"), *and id.* at 24 (noting that Plaintiff told a neuropsychological evaluator in 2019 that he had no "problems with cooking, housekeeping, or maintaining personal

hygiene"). The ALJ was unable to identify evidence reconciling the inconsistency because Plaintiff provided no explanation.

The ALJ also reviewed and discussed relevant medical opinion evidence. Specifically, he weighed the opinions of state agency medical consultants as well as independent consultative examiner Dr. John King. *Accord id.* at 1042. The state consultants found Plaintiff was not blind but instead had "limited" vision. In support, they cited Plaintiff's right-eye enucleation, 20/80-1 uncorrected left-eye vision, normal left-eye pupil findings, and normal left-eye confrontational field findings. *Id.* at 26. The ALJ found these opinions "somewhat persuasive" but opted to impose even more restrictive limits on Plaintiff's RFC than the consultants recommended. *See id.* (prohibiting all tasks concerning fine depth perception). Dr. King, on the other hand, opined that Plaintiff is "legal[ly] blind[ ]" and should receive social security disability insurance due in part to his "blindness." *Id.* at 1041, 1044. But the ALJ found that opinion unpersuasive after noting that Dr. King did not conduct any vision examination. *Id.* at 28.[8]

Ultimately, after comparing Plaintiff's statements to the record's objective medical evidence and medical opinion evidence, the ALJ found Plaintiff's self-assessed visual limitations "not consistent with or supported by the evidence." *Id.* at 21. Accordingly, Plaintiff's RFC accommodated the severity of his visual condition by prohibiting all tasks requiring fine depth perception—nothing more.

### 2. Mobility and Dexterity

Plaintiff attributes his low exertional capacity and dexterity to the symptoms following

---

[8] Dr. King inexplicably assumed Plaintiff's "blindness" by taking him at face value. *See id.* at 1052 (assuming legal blindness because "[Plaintiff] had reportedly been deemed legally blind" despite Plaintiff failing to provide concrete details of this alleged legal determination). Dr. King provided no other reason to support his opinion on Plaintiff's vision.

being stabbed by strangers,[9] which affected his abdomen and left hand/arm, and being shot in the face. *E.g.*, Mot. at 1. For this, the ALJ found some support from the record. *See* AR at 27 (crediting a third-party function report documenting Plaintiff's difficulties lifting, squatting, bending, standing, reaching, walking, hearing, and climbing stairs); *id.* at 21 (discussing and acknowledging some exertional limitations caused by Plaintiff's "extreme obesity").

The ALJ, however, also noted objective medical evidence belying Plaintiff's alleged need for further limitation. *Compare id.* at 21–24 (showing that despite Plaintiff slightly stooping and stumbling at one consultative examination, he could walk mostly normally; possessed "full strength"; could play with a dog; go out to eat weekly; shop in stores for clothing and groceries; and sing karaoke on stage), *and id.* at 26 (assessing Plaintiff's gait as "normal"), *and id.* at 1188 ("[Plaintiff] ambulated independently, and [his] gait was coordinated."), *with id.* at 21 (Plaintiff's later claims that he could not cook, do chores, go out alone, or shop for himself). Relatedly, the objective evidence contradicted Plaintiff's hearing testimony claiming the "inability to use one upper extremity [without] an assistive device . . . [or] use both upper extremities for fine . . . movements." *Compare id.* at 50 (Plaintiff insisting his left-arm and stomach injuries require that he use tools to open two-liter soda bottles), *and id.* at 52 (describing the alleged uselessness of his *left* hand because he "ha[s] no grip, no nothing"), *with id.* at 1049–50 (noting Plaintiff's "opposite of expected" dexterity evaluation after his allegedly non-functional left hand scored higher on a manual grip strength test than his right hand—the dominant, uninjured hand).

### 3. Mental Conditions

Plaintiff has alleged that the symptoms of his mental conditions severely limit his work-

---

[9] Although it is not clear who stabbed him, the assailants apparently drove Plaintiff to Presbyterian Kaseman Hospital and deposited him at the front entrance. Kaseman transferred him to UNM Hospital. AR at 791, 1045.

related activities.[10]  As required, the ALJ assessed this allegation's veracity by comparing it to the record's objective medical evidence and medical opinion evidence.  He found one mild limitation, and two moderate limitations, but no marked or extreme limitations.

The ALJ found medical evidence opining that Plaintiff's ability to comprehend instructions was "good"; his thought process was "logical . . . rational, relevant, and well organized [sic]"; and his intellectual functioning was "[with]in the average range."  *Id.* at 19; *accord id.* at 1042–53.  He cited two separate evaluations showing Plaintiff's memory was "grossly intact," his attention was "adequate," his fund of knowledge remained "good," and he retained at least "average intellectual functioning."  *Id.* at 19; *accord id.* at 1211–81, 1403–06.  This led the ALJ to conclude that Plaintiff "has a mild limitation in understanding, remembering, and applying information."  *Id.* at 19.

Plaintiff alleged that "he only spends time with family at home," experienced irritability, and was "observed to be pessimistic and dysphoric," but the record also suggested that Plaintiff could be "engaged" and "cooperative," friendly," "get[ ] along with others," and even perform karaoke outside his home.  *Id.* (citing five separate exhibits in the record).  After reconciling the dueling evidence, the ALJ found Plaintiff has a "moderate limitation in interacting with others." *Id.*  Similarly, the ALJ found Plaintiff has a "moderate limitation in adapting or managing [him]self" because, despite reported difficulty with his personal care, cooking, and household chores, the ALJ noted Plaintiff's self-contradiction—denying such problems and stating elsewhere that he can shop in stores and socialize.  *Id.* at 19.

The ALJ's review of relevant medical opinions failed to ameliorate the inconsistencies he found between the record and Plaintiff's self-reported symptom severity.  The ALJ considered the state agency consultants' opinions, which he found only "somewhat persuasive."  *Id.* at 27

---

[10] Plaintiff suffers from seizure disorder, migraine headaches, PTSD, somatic symptom disorder, mild neurocognitive disorder due to a TBI, unspecified mood disorder, and depression.  *E.g.*, AR at 15.

(asserting Plaintiff's diagnoses, irritability, depression, and nightmares had no severe effects). Deviating from their suggestion, the ALJ formulated an RFC accommodating those mental symptoms that Plaintiff supported credibly. *Id.* He also considered Dr. LaCourt's "somewhat persuasive" opinion, which declared that Plaintiff suffers moderate limitations in sustained concentration, task persistence, interacting with supervisors or coworkers or the public, and being aware of and responding appropriately to normal hazards. *Id.* at 27 (acknowledging Dr. LaCourt's observational notes on Plaintiff's affect appeared objectively supported); *but see id.* (relying on other portions of the record inconsistent with Dr. LaCourt's findings of marked limitations). The RFC reflects the ALJ's consideration of these opinions through its specific limitations on who Plaintiff can interact with at work and the length of concentration he can sustain. *Id.* at 20. On the other hand, Dr. King's opinion received no weight. *Id.* at 27–28. Minus the memory limitations his own test results supported, Dr. King found Plaintiff's intellectual functioning, verbal comprehension, and working memory within the average range. *Id.* at 28. Further, the ALJ explicitly cited where the record conflicted with the subjective mental condition symptoms Plaintiff reports. Specifically, the ALJ cited his observations that Plaintiff was cooperative, friendly, well-organized, rational, and utilizing relevant thought process. *Id.* at 28; *accord id.* at 1048.

## C. Step Five

At step five, the ALJ developed the record by questioning the vocational expert ("VE"). The VE testified that a hypothetical person with Plaintiff's RFC could not perform Plaintiff's past occupations but could perform the following representative jobs: laundry classifier (41,000 jobs in the national economy), housekeeper (850,000 jobs in the national economy), and garment sorter (205,000 jobs in the national economy). *Id.* at 68–9; *see also id.* at 58 (Plaintiff admitting he is

13

capable of manipulating clothing).  The ALJ found the VE's testimony consistent with the

Dictionary of Occupational Titles, thereby supporting the conclusion that Plaintiff can perform

other jobs existing in the national economy in significant numbers.  *Id.* at 28–29.  Thus, he found

Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.*

## V.   DISCUSSION

As explained above, Plaintiff argues that the ALJ "failed to properly evaluate" the RFC,

which the Court reads as an argument that the RFC is unsupported by substantial evidence.  *See*

Mot. at 11–14.  Plaintiff takes particular issue with the ALJ's assessment of his mental limitations,

visual limitations, and his hearing testimony.  Mot. at 11–14.  Plaintiff also argues that the ALJ

"failed to develop [Plaintiff's] mental impairment at the hearing" because the ALJ did "not ask[ ]

about [Plaintiff's] mental health limitations at the hearing."  *Id.* at 1, 9.

### A.  Substantial Evidence Supported the RFC Findings

An ALJ must evaluate a claimant's RFC by considering all relevant evidence, including

medical records, the observations of treating physicians, and the claimant's self-reported

limitations.  20 C.F.R. § 404.1545.  The ALJ's consideration of such evidence, however, applies

only to *credible* impairments supported by *substantial* evidence.  *See generally* SSR 96-8p.  The

rote allegation of a fact, symptom, or condition, by itself and without objective support, is not

dispositive.  Moreover, the ALJ "need not engage in a formalistic factor-by-factor recitation of the

evidence when evaluating the functional effects of a claimant's subjective symptoms," nor do the

regulations require the ALJ to "discuss every factor listed . . . ; they expressly provide that [ ]he

*does not* need to do so."  *Guillar v. Comm'r, SSA*, 845 F. App'x 715, 721 (10th Cir. 2021)

(unpublished) (emphasis added) (quotations omitted) (citing SSR 16-3p).

Plaintiff criticizes the RFC because, in his view, the ALJ had to consider the following

14

specific issues: (1) the impact of Plaintiff's vision impairment on his ability to navigate a workplace and (2) the combination of Plaintiff's visual impairment vis-à-vis his obesity and mental health.  Mot. at 1, 10–11.  But a review of the record shows this argument is without merit.

The ALJ considered Plaintiff's visual limitations at considerable length.  AR at 16, 53–54, 58 (assessing Plaintiff's vision complaints and noting test results establishing Plaintiff is not legally blind); *cf.* Mot. at 1 (Plaintiff stating not that he is blind but, instead has "low" vision in his remaining eye).[11]  The ALJ also considered Plaintiff's mobility.  AR at 52 (probing Plaintiff's self-assessed "mobility" limitations and inability to bend over at the hearing); *id.* at 22–27 (detailing the plethora of objective medical evidence and medical opinions that contradict Plaintiff's proclaimed near-immobility).  And he considered Plaintiff's obesity, finding that "[it] does not equal a listing alone or in combination with other impairment . . . . [but it] alone causes significant limitation in [Plaintiff's] ability to perform basic work activities."  *Id.* at 18, 22.  He assessed Plaintiff's mental impairments too.  *Id.* at 19, 22–27 (covering Plaintiff's mental impairments "singly and in combination," including the numerous sources of evidence that the ALJ found to contradict the reported intensity, persistence, and limiting effects of Plaintiff's mental symptoms).

The Court sees these considerations as potential applications of multiple factors set forth in SSR 16-3p, namely: "location, duration, frequency, and intensity of pain or other symptoms"; "factors that precipitate and aggravate the symptoms"; or "any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms."  Although Plaintiff insists that the ALJ needed to explicitly consider the particular scenarios that Plaintiff has concocted here, both the SSA's regulations and the Tenth Circuit squarely reject this view.

---

[11] Further, Plaintiff appears to misread the ALJ's findings themselves.  *Compare* Mot. at 13 (referencing a visit to Dr. Athanasios Manole and citing it as the ALJ's sole evidence used to contradict Plaintiff's self-proclaimed blindness), *with id.* at 26 (citing *id.* at 703) (establishing Plaintiff's vision at 20/80-1 using UNMH eye clinic test results—not a visit to Dr. Manole).

*Guillar*, 845 F. App'x at 720 (where the record lacks information regarding a factor, the ALJ need "not discuss that specific factor"); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (rejecting such an argument where the ALJ's RFC contains limits "not inconsistent" with the suggested RFCs of consultative examiners).

Moreover, contrary to Plaintiff's belief, the RFC sufficiently accommodated these limitations, including the "moderate" "paragraph B" limitations with which Plaintiff takes specific issue. *Compare* Mot. at 12–13 (coupling factual recitations with the conclusory assertion that the RFC contains "nothing" that accounts for specific mental limitations), *with* AR at 20 (limiting Plaintiff to "simple, routine tasks"; "simple, work-related decisions"; "dealing with changes in a routine work setting"; limiting his interpersonal encounters; and restricting concentration, pace, and persistence to two-hour intervals), *and Qualls*, 206 F.3d at 1372 (finding an RFC restricting a claimant's exertional capacity sufficiently accommodated the claimant's subjective symptoms).

In sum, the record belies Plaintiff's arguments. The ALJ properly considered—and, within his discretion after noting clear contradictions, rejected—the severe subjective symptoms of which Plaintiff complained. He did so by referring to objective medical evidence and relevant medical opinions. The ALJ had no obligation to articulate the specific combinations of these symptoms that Plaintiff insists upon here; he only needed to consider them all, which he did. The RFC's restrictions sufficiently account for Plaintiff's physical and mental limitations. The Court does not "reweigh the evidence or retry the case," only finding "no substantial evidence . . . where there is a conspicuous absence of credible choices" or unrebutted medical evidence. *Guillar*, 845 F. App'x at 718. To the extent Plaintiff's arguments invite the Court to reweigh the evidence, the Court must decline. Otherwise, affording pieces of record evidence more or less weight than the ALJ used would contravene the kind of analysis expressly forbidden by binding precedent. "While the

ALJ might have arrived at a different conclusion when considering the same evidence, h[is] decision has more than a scintilla of evidentiary support and therefore withstands substantial-evidence review." *Guillar*, 845 F. App'x at 720–21.  The ALJ did not commit reversible error.

### B.  ALJ Sufficiently Developed the Record

An ALJ's duty to develop the record is triggered only by a sufficient showing of evidence from a claimant; otherwise, the ALJ's duty lies dormant if "sufficient information exist[s] for the ALJ to make [a] disability determination." *Cowan*, 552 F.3d at 1187; *e.g.*, *Jones v. Chater*, 110 F.3d 73, 73 (10th Cir. 1997) (triggering only when record suggests that a claimant suffers from a disorder yet lacks "[ ]sufficient medical evidence to evaluate the disorder and its effects on the claimant's ability to work"); *see also Wall*, 561 F.3d at 1062–63 (requiring the predicate evidence be "substantial on its face").  Simply put, the duty does not exist to buttress an already sufficient record but rather to ensure no open questions remain.  *See, e.g.*, *Jones*, 110 F.3d at 73 (requiring an insufficient record to trigger the duty to develop the record).  Moreover, the duty lessens when a claimant—like here—retains legal counsel at his hearing because the ALJ may then "rely on the [attorney] to structure and present [the claimant's] case in a way that the claimant's claims are adequately explored." *E.g.*, *Wall*, 561 F.3d at 1188 (citing cases stating the same).

With these rules in mind, the Court considers Plaintiff's argument—two sentences, a lone premise and its conclusion.  Plaintiff points out that the ALJ never asked him about his mental impairment(s) at the hearing, an omission that Plaintiff contends constituted a violation of the ALJ's duty to develop the record. Mot. at 1, 9.  But this argument rests on the incorrect assumption that the ALJ needed more information to evaluate Plaintiff's conditions and their impact on his RFC.  And Plaintiff acknowledges that (1) the ALJ did indeed possess evidence of those conditions and (2) assessed that data in reaching his conclusion, albeit a conclusion with which Plaintiff

disagrees.  These two concessions nullify the argument that the ALJ needed more information.

Furthermore, because Plaintiff had counsel represent him at the administrative hearing, the ALJ

had no obligation to deviate from Plaintiff's attorney's presentation strategy, which further justifies

his decision not to ask about Plaintiff's mental health conditions.  *Wall*, 561 F.3d at 1188; *see also*

AR at 65–66 (giving Plaintiff and his attorney an explicit opportunity to develop the record

regarding Plaintiff's mental impairments).

The record contained sufficient information on Plaintiff's mental health conditions without

the need for hearing testimony.  The ALJ was entitled to rely on that record without questioning

Plaintiff on that subject at the hearing and, to the extent the question is close, the fault lies with

Plaintiff's attorney for neglecting the opportunity when the ALJ presented it.  The ALJ did not err.

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be

**AFFIRMED**, that Plaintiff's Motion be **DENIED**, and this case is **DISMISSED WITH**

**PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of
these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of
the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in
writing no later than seven days from the date of this filing. **A party must file any objections with the
Clerk of the District Court within the fourteen-day period if that party wants to have appellate
review of the proposed findings and recommended disposition. If no objections are filed, no appellate
review will be allowed**.